IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                               19-CR-243-S

TORIN JONATHAN FINVER,

Defendant.

## PLEA AGREEMENT

The defendant, TORIN JONATHAN FINVER, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.    THE PLEA AND POSSIBLE SENTENCE

1.     The defendant agrees to waive indictment and to plead guilty to a one count Information which charges a violation of Title 21, United States Code, Section 952(a) (importation of controlled substances), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $1,000,000, a mandatory $100 special assessment and a term of supervised release of at least 3 years and up to life. The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2.     The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for

time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.   ELEMENTS AND FACTUAL BASIS

3.    The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

    a.  the defendant brought cocaine into the United States from a place outside the United States

    b.  the defendant knew the substance he was bringing into the United States was a controlled substance; and

    c.  the defendant knew that the substance would enter the United States.

## FACTUAL BASIS

4.    The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

    a.  On or about the date of November 21, 2018, in the Western District of New York, from the country of Germany, the defendant, Torin Jonathan Finver, did intentionally and knowingly import into the United States, cocaine, a narcotic drug and a Schedule II controlled substance.

    b.  On or about November 21, 2018, Customs and Border Protection ("CBP") special agents examined a parcel at the Chicago, Illinois post office addressed to "T Finver." The parcel listed the defendant's residence as the recipient address, 5202 Columbia Ave. Hamburg, NY. The parcel was from Germany and the sender information was fictitious. The package field tested positive for cocaine. The defendant admits that he knowingly and intentionally intended this package to be delivered to his residence.

2

c.     On or about December 10, 2018, during review of incoming mail in Rochester, NY, United States Postal Inspection Service ("USPIS") Inspectors located a U.S. Postal Service Priority Mail Parcel addressed to "T Finver." The parcel listed the defendant's residence as the recipient address. The parcel was inbound from California. A K-9 sniff resulted in a positive alert, indicating that the K-9 detected the odor of a controlled substance that he has been trained to detect. On December 12, 2018 USPIS Inspectors executed a federal search warrant. The search resulted in the discovery of three small envelopes that contained a brown rock-like substance that field tested positive for heroin. The defendant admits the package contained heroin. The defendant admits that he intended the package of heroin to be delivered to his residence.

d.     On or about December 12, 2018, during review of incoming mail in Rochester, NY, USPIS Inspectors located a U.S. Postal Service Priority Mail Parcel addressed to "T Finver." The parcel was from California. A K-9 sniff of parcel resulted in a positive alert, indicating that the K-9 detected the odor of a controlled substance that he has been trained to detect. On December 14, 2018, law enforcement executed a federal search warrant on the parcel. The search resulted in the discovery of cocaine. The defendant admits the package contained cocaine. The defendant admits that he intended the package of cocaine to be delivered to his residence.

e.     On or about December 15, 2018, during review of incoming mail in Hamburg, NY, Postal Inspectors located a U.S. Postal Service Priority Mail Parcel addressed to "T Finver." The parcel listed the defendant's residence as the recipient address. The parcel was inbound from California.

e.     On or about December 17, 2018, HSI agents received a Federal search warrant for the defendant's residence. Law enforcement arranged for a controlled delivery of the parcel discovered on December 15. A U.S. Postal Inspector acting in an undercover capacity delivered the parcel and other mail addressed to "Torin FINVER." After knocking on the front door of the residence, the USPIS Inspector encountered the defendant. The USPIS Inspector delivered the parcel and other mail to the defendant and the defendant took the parcel and the other mail into the residence.

f.     After securing the premises and arresting the defendant, agents asked to interview the defendant. The defendant agreed. Under rights advisement and waiver thereof, the defendant stated that he had been ordering "darkweb" packages of heroin and cocaine from the Dream Market marketplace; that he had ordered seven (7) times in the last two (2) months; that he used Bitcoin to pay for the narcotics packages; that he chose vendors that received good feedback in the comments section

on Dream Market; that he knew that some of the vendors on Dream Market he ordered from were shipping international packages as well as domestic packages; that he would snort the heroin and cocaine; that he had a box of synthetic urine in the basement that he used to pass required weekly drug tests.

g.     On December 17, 2018, the defendant also gave law enforcement officers consent to search the parcel discovered on December 15. The search resulted in the discovery of shrink wrapped package containing approximately 2 grams of a white chunky substance. The white chunky substance field tested positive for cocaine. The defendant admits the white chunky substance was cocaine.

h.     The controlled substances recovered from the parcels addressed to the defendant and his residence were sent to the U.S. Customs and Border Protection Laboratories and Scientific Services Directorate for analysis, after which the laboratory concluded that the substances were cocaine and heroin, and weighed 9.33 grams and 3.42 grams, respectively.

i.     Converting the heroin and cocaine to converted drug weight, the equivalent of at least 5 kilograms, but less than 10 kilograms of converted drug weight is the amount involved in the defendant's relevant conduct encompassed in the Information which could be readily proven by the government against the defendant.


### III.     SENTENCING GUIDELINES

5.     The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).


### BASE OFFENSE LEVEL

6.     The government and the defendant agree that Guidelines § 2D1.1(a)(5) and 2D1.1(c)(14) apply to the offense of conviction and provides for a base offense level of **12**.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.      The government and the defendant agree that the following specific offense characteristic does apply:

a.      the 2 level decrease pursuant to Guidelines § 2D1.1(b)(18) (safety valve).

## ADJUSTED OFFENSE LEVEL

8.      Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **10**.

## ACCEPTANCE OF RESPONSIBILITY

9.      At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility), which would result in a total offense level of **8**.

## CRIMINAL HISTORY CATEGORY

10.     It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11.     It is the understanding of the government and the defendant that, with a total offense level of **8** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **0** to **6** months, a fine of **$2,000** to **$1,000,000**, and a period of supervised release of **3** years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

12.     The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

13.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV.     STATUTE OF LIMITATIONS

14.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this

agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.    GOVERNMENT RIGHTS AND OBLIGATION

15.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment; and

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor;

16.    At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 18-mj-5282.

## V.    REMOVAL

17.    The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if

7

convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI.   APPEAL RIGHTS

18.   The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

19.   The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20.   The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, [notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII.   TOTAL AGREEMENT AND AFFIRMATIONS

21.   This plea agreement represents the total agreement between the defendant, TORIN JONATHAN FINVER, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY:   JOSHUA A. VIOLANTI
Assistant United States Attorney

Dated: January 17, 2020

I have read this agreement, which consists of pages 1 through 9. I have had a full opportunity to discuss this agreement with my attorney, Barry N. Covert, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

TORIN JONATHAN FINVER
Defendant

Dated: January 17, 2020

BARRY N. COVERT, ESQ.
Attorney for the Defendant

Dated: January 17, 2020